UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO.  05-214-02 (RJL) |
| | : | |
| COLLADO RODRIGUEZ, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S  MOTION TO ADMIT
EVIDENCE OF OTHER CRIMES PURSUANT TO RULE 404(b)**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully asks this Court to permit the introduction of other crimes, wrongs, and acts against defendant Collado Rodriguez for the purpose of showing motive, opportunity, intent, plan, knowledge, and absence of mistake as permitted by Rule 404(b).  The specific acts sought to be introduced led to charges of importation and possession with intent to distribute heroin in the Circuit Court for Cecil County, Maryland.  As those charges have yet to be resolved, it is the acts and not the conviction, that the government is seeking to introduce in this case.  In support of this Motion, the government relies on the points and authorities set out below and any others that may be cited at a hearing on this Motion.

A.     **The Present Case**

The defendant is presently charged with two counts of distribution of narcotics. Count one alleges that on April 20, 2005, the defendant distributed 100 grams or more of heroin. Count two alleges that on May 6, 2005, the defendant distributed 500 grams or more of powder cocaine. Each count also references 18 U.S.C. section 2, which states that aiders and abettors shall be punished as if they were a principal in the offense.

On April 20, 2005, Rodriguez and a co-defendant, Kelvin Marte, met an undercover MPD detective and two confidential informants at a car repair shop on Mount Olivet Road in Northeast for the purpose of completing a drug transaction. At that location, Rodriguez and a confidential informant engaged in a discussion in Spanish about the details of a heroin sale. Ultimately, the defendant agreed to accept $7,500 for 100 grams of heroin. This transaction was captured on videotape. While the co-defendant Marte counts the money, the defendant can be seen breaking down the heroin and placing small packets on a scale.

In early May 2005, a confidential informant arranged another transaction with Rodriguez and Marte. By telephone Rodriguez agreed to bring 1 kilogram of crack cocaine and 250 grams of heroin from New York City to the informant here in Washington, D.C.. Rodriguez explained that he would be coming to the area by car, but that Marte would be bringing the drugs on a Greyhound bus. However, on the day the deal was to occur, May 6, 2005, Rodriguez spoke to the informant by telephone and stated that he was unable to bring any heroin, but that Marte was bringing 1 kilogram of pressed powder cocaine on the bus. The parties agreed that the price would be $26,500 for the cocaine. All the participants met at the Greyhound station here in Washington. The informant then drove Marte to a Burger King

on Florida Avenue and Rodriguez followed in another car. At the Burger King lot, an undercover officer provided a sum of cash for the cocaine. Once Marte gave the drugs to the informant, officers moved in and arrested all participants.

**B.    Evidence of Other Crimes, Wrongs, and Acts**

The government proposes to introduce evidence showing that on August 9, 2004 the defendant was caught in Maryland transporting a significant quantity of narcotics from New York City. The evidence would be presented through the testimony of Maryland State Police Trooper J.D. Cameron who made the traffic stop of the vehicle the defendant was riding in and the Maryland State Police chemist who tested the heroin taken from the defendant on that day.

Trooper Cameron will relate that shortly before 10:00 pm on August 9, 2004 he was working in an unmarked car on Interstate 95 in Cecil County, Maryland. Using a laser, he recorded a speed of 73 miles per hour in an area posted at 65 miles per hour by a white Toyota Previa minivan with New York registration plates. The minivan was stopped and as the trooper walked alongside the car, he noticed three cellphones and no luggage in the van. Speaking to the two occupants through the passenger side window, the trooper noticed both individuals were shaking. The passenger, later identified as Rodriguez, was clenching his fists tightly and looking straight ahead. With fumbling hands, the driver provided a New York license. He did not initially produce a registration card. The driver stated they were going to get off Interstate 95 at exit 57 and that the passenger would then direct them to their destination. He further explained it was just a down and back trip and that they would be

going back to New York the next morning. The trooper then asked Rodriguez for identification. Using his right hand to steady his left hand, Rodriguez provided a Dominican Republic electoral card. While running a license check as well as a warrant check for both individuals, the trooper called for support. Trooper Conner arrived and after speaking with both individuals, obtained verbal consent to search the van.

Trooper Cameron asked the driver a second time for consent to search the van, and the driver again gave consent. The driver then signed a written consent form. At this point, Rodriguez was asked to get out of the passenger seat. As Trooper Cameron gave a routine pat down of Rodriguez for weapons, he felt a solid object near Rodriguez's waist. Believing the object to be the handle of a gun, Trooper Cameron attempted to grab Rodriguez's arms, however Rodriguez pushed the trooper away and ran toward a wooded area. Although the troopers were able to grab Rodriguez, they were not able to control him and all three individuals fell over a guard rail and down a small hill. A struggle ensued and ultimately Rodriguez was handcuffed. A more thorough search then discovered four heat sealed freezer bags wrapped around his waist containing a hard-packed, brown, powdery substance. The packages were analyzed by a chemist at the Maryland State Police Crime lab and found to contain over 800 grams of a mixture of cocaine and heroin.

C.    **Legal Standards Supporting Admissibility of the Evidence**

Evidence of other crimes, wrongs or acts is admissible under Federal Rule of Evidence. 404(b) if offered for any permissible purpose. Rule 404(b) is a rule of inclusion rather than exclusion. "[A]lthough the first sentence of Rule 404(b) is 'framed restrictively,'

the rule itself 'is quite permissive,' prohibiting the admission of other crimes evidence 'in but one circumstance' – for the purpose of proving that a person's actions conformed to his character." *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*), *cert. denied*, 525 U.S. 1149 (1999). *See also United States v. Moore*, 732 F.2d 983, 987 (D.C. Cir. 1984) ("[o]nly one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits a crime probably has a defect in character; a man with such a defect of character is more likely than men generally to have committed the act in question."). Permissible purposes include – but are not limited to – proof of intent, motive, opportunity, plan, knowledge, identity, or absence of mistake or accident, *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir.), *cert. denied*, 498 U.S. 825 (1990).

> Other crimes evidence should be admitted if the following three criteria are met:
>
> > 1) the evidence of other crimes or acts is relevant in that is has "**any tendency** to make the existence of **any fact** that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401; 2) the fact of consequence to which the evidence is directed relates to a matter in issue other than the defendant's character or propensity to commit crime; and 3) the evidence is sufficient to support a jury finding that the defendant committed the other crime or act [citations omitted].

*United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000)(emphasis added). Here, the other crimes evidence should be admitted because it tends to make several facts of consequence more probable and it relates to matters other than defendant's character. It will assist in proving the defendant's criminal intent to distribute heroin and cocaine on the dates alleged and it will assist in proving that the defendant acted knowingly and on purpose, rather than by mistake or accident.

5

The evidence of the defendant's prior possession of a significant quantity of heroin is relevant to show his knowledge of the character of drugs in general, his specific intent regarding the sale of heroin on April 20, 2005, as well as a lack of any mistake in his distribution of that heroin. To convict the defendant of count one in this case, it is not enough to merely show that the defendant distributed a substance that later proved to be narcotics. The government must show that the defendant knew, at the time of distribution, that the substance he was distributing was narcotics. The fact that the defendant possessed heroin on a previous date, tends to make it less probable that he did not know the substance he distributed on April 20, 2005 was contraband heroin. *See United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002); *United States v. Brown*, 16 F.3d 423, 431 (D.C. Cir.), *cert. denied*, 513 U.S. 900 (1994)(evidence of the defendant's possession of a gun at the time of arrest was relevant to show his intent, knowledge, or absence of mistake with respect to the firearms found in a safe during a search three months earlier).

Likewise, the defendants transportation of narcotics from New York into Maryland in 2004 is relevant to his specific intent and knowledge nine months later, on May 6, 2005, when a significant quantity of cocaine was transported from New York into Washington, D.C.. The fact that the defendant was transporting wholesale quantities of narcotics on a prior occasion makes it less probable that his transportation of wholesale quantities of narcotics on May 6, 2005 was done by accident or mistake. *See United States v. Griffin*, 1996 WL 134245 *3 (D.D.C.)(not reported in F. Supp.)(recognizing that facts of a drug trafficking arrest in Maryland seven months prior to an arrest at Union Station are "highly probative and properly admissible to show defendant's motive, knowledge, and intent to distribute drugs, *and that his*

*actions were part of his drug transportation business.*")(emphasis added).  Thus the first element of the test set out in *Bowie*, that the other acts evidence have a tendency to make the existence of some fact of consequence more probable, is satisfied.

The second element of *Bowie* is simply that the facts to which the other crimes evidence are relevant are issues other than character or propensity.  In this case, the matters at issue are intent and knowledge, not character or propensity, so that element is easily satisfied.  The third element is that there is evidence from which the jury can conclude the defendant committed the other acts.  Trooper Cameron will identify the defendant in court and pictures taken of the defendant at the time of the August 9, 2004 arrest may be offered into evidence.  Certainly these items are evidence sufficient to meet the third *Bowie* element.  Because all three criteria are satisfied, the evidence of the defendant's actions on August 9, 2004 is admissible in this trial.

**D.     The Probative Value Outweighs Any Rule 403 Concerns.**

Even admissible evidence can be excluded if its probative value is substantially outweighed by any prejudicial effect, considerations of undue delay, or wasting of time.  Fed. R. Evid. 403.  The balancing in this case, however, falls strongly in favor of admission.

Preliminarily, it is worth noting that it takes a great deal of unfair prejudice before the balance tips toward exclusion.  In *United States v. Gartmon*, 146 F.3d 1015 (D.C. Cir. 1998), the Court of Appeals analyzed the Rule 403 balancing test in considering whether evidence that a defendant placed a gun in a co-defendant's vagina and threatened her was unduly

prejudicial in a prosecution for securities fraud. That Court concluded the evidence was admissible and noted:

> Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone. It does not bar powerful, or even "prejudicial" evidence. Instead, the Rule focuses on the "danger of *unfair* prejudice," and gives the court discretion to exclude evidence only if that danger "*substantially* outweigh[s]" the evidence's probative value. [citation omitted, alterations in original].

*Id.* at 1021.

Notably, the danger that this Court must weigh is not the danger that the other crimes evidence will weaken defendant's defense, but rather the danger that the jury will misuse the evidence by inferring that, merely because defendant engaged in these prior bad acts, he is prone to commit the offense charged. *See United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir.), *cert. denied*, 516 U.S. 926 (1995). The law in this Circuit is clear that in balancing the probativeness and prejudice of other crimes, "it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged." *United States v. Harrison*, 679 F.2d 942, 948 (D.C. Cir. 1982)(*quoting United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978)). As explained above, the prior act of transporting a wholesale quantity of narcotics has a particular close relationship to the knowledge and intent elements of the crimes charged.

Because the other crime evidence can be succinctly presented, its probative value overcomes any considerations of undue delay. The government proposes to present this other

crimes evidence through the testimony of Trooper Cameron and, if a stipulation cannot be reached, through the testimony of the Maryland State Police chemist.  Trooper Cameron will be able to fully describe all the facts of the prior misconduct and to identify the defendant as the participant in those acts.  The Maryland chemist would be needed only for the expert testimony that the substance recovered on August 9, 2004 was in fact a mixture of cocaine and heroin.  Thus, there is no reason to exclude the other crimes evidence because that evidence would significantly delay the trial.  Clearly the presentation of the evidence could be accomplished quickly and with little confusion of the issues.  Finally, the other crimes evidence should not be excluded as a waste of time.  The probative value of that evidence in showing the defendant's knowledge and intent makes the other crimes evidence an important part of this case.

THEREFORE, the Government submits that the evidence of the defendant's transportation of over 800 grams of narcotics on August 9, 2004 should be admitted in this trial as probative evidence of the defendant's intent and knowledge on April 20, 2005 and May 6, 2005 that is not outweighed by any undue prejudice.

Respectfully Submitted,

KENNETH L. WAINSTEIN
Attorney of the United States in
and for the District of Columbia

BY: _____
BRYAN ROSLUND
Special Assistant United States Attorney
Organized Crime and Narcotics Trafficking
555 4th Street, N.W.   Rm 4108
Washington, D.C. 20530
(202) 514-4922