FILED

JAN 9 - 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-214 (RJL) |
| v. | : | |
| COLLADO RODRIGUEZ | : | Plea Hearing: January 8, 2007 |
| Defendant. | : | |

## GOVERNMENT'S PROFFER OF EVIDENCE
## IN SUPPORT OF DEFENDANT'S GUILTY PLEA

The United States of America submits the following proffer of proof in support of defendant's plea of guilty to unlawful distribution of heroin as alleged in Count One of the Indictment in this matter.

*Elements of the Offense.*

The essential elements of the offense of unlawful distribution of heroin, in violation of 21 United States Code, sections 841(a)(1) and 841(b)(1)(C), each of which the Government must prove beyond a reasonable doubt to sustain conviction, are:

(1) That the defendant distributed a controlled substance. "Distribute" means to transfer

or attempt to transfer to another person. The Government need not prove that the defendant received or expected to receive anything of value in return. To establish this element of the offense, the Government must prove beyond a reasonable doubt that the defendant distributed a detectable amount of the controlled substance heroin;

(2) That the defendant distributed the controlled substance knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

(3) That the substance at issue in this case was heroin. The law makes heroin a controlled substance.

(4) That the distribution involved a detectable amount of a substance or mixture that contained heroin.

### *Penalties for the Offense.*

The penalty for unlawful distribution of heroin is set out at 21 United States Code, section 841 (b)(1)(C). The maximum penalty is:

(1) a term of imprisonment of not more than twenty years;

(2) a term of supervised release of at least three years after any period of incarceration;

(3) a fine not to exceed $1,000,000;

(4) a special assessment of $100.

U.S. Sentencing Guideline section 5E1.2 permits the Court to impose a fine to pay the costs of imprisonment, term of supervised release, and period of probation.

### *Factual Proffer.*

If this matter had gone to trial, the Government's evidence would have established the following facts beyond a reasonable doubt:

During 2004, a joint task force of federal and local law enforcement agencies established

an undercover auto repair shot in the 1100 block of Mount Olivet Road, N.E., in Washington, D.C. The location was wired with audio and visual equipment so that narcotics transactions could be recorded. Undercover officers and informants conducted a number of narcotics and weapons transactions at this location during the many months that it was in operation.

On April 20, 2005, the defendant and a co-defendant, Kelvin Marte, traveled to the District of Columbia from New York City carrying heroin. The defendant and Mr. Marte came to the Mount Olivet Road shop and were introduced to an undercover police officer posing as a buyer. After a discussion about the price, the parties agreed to a sale. Mr. Marte then removed a quantity of heroin from his pants. Both the defendant and Mr. Marte separated the heroin, which was packaged in "fingers" and placed those fingers on a scale. While the defendant continued to place the fingers of heroin on the scale, the undercover agent gave $7,500 to Mr. Marte. Once approximately 100 grams had been weighed out, the parties had discussions about the sale of additional quantities of heroin but not further purchases were concluded on that day.

At trial, the Government would have played the video tape of this transaction and provided both Spanish and English translations of the conversations that can be heard. A DEA chemist would have testified that the substance involved was tested and found to be 95 grams of heroin, a controlled substance.

The Government would also offer the testimony of a cooperator about telephone conversations made on May 4, 2005 and May 6, 2005 to set up a second narcotics transaction. In the May 4, 2005 conversation, it was agreed that the defendant and Mr. Marte would arrange for 1 kilogram of cocaine and 250 grams of heroin to be brought from New York to Washington, D.C. The arrangement was that Marte would carry the drugs from New York to Washington,

D.C. on a bus on May 6, 2005, and that the defendant would drive to Washington separately. When both Marte and the defendant had arrived in Washington, D.C., the plan was that the defendant, Marte, the cooperator and the cooperator's partner, in actuality an undercover officer, would all gather to conduct the transaction. In the May 6, 2005 phone conversation, the plan was altered in that, the cooperator was informed that the defendant and Mr. Marte were unable to secure heroin for the deal, but that the cocaine was to be delivered as arranged. The price for the kilogram of cocaine was agreed to be $26,500.

The Government would have shown the video tape made on May 6, 2005 at trial and provided English and Spanish transcripts. The video shows that the cooperator picked up Mr. Marte at the Greyhound bus station. Several phone calls can be heard in which the cooperator attempts to give directions so that the defendant can meet up with Mr. Marte and the cooperator. The video also shows Mr. Marte and the cooperator waiting for the defendant's car to arrive so that the transaction could be completed. Eventually, the video shows that the car carrying the defendant was able to meet with Mr. Marte and the cooperator. Mr. Marte and the cooperator are then seen to drive from the Greyhound bus station to the parking lot of the Burger King restaurant near the intersection of Third Street and Florida Avenue, N.E.

Once at that location, the videotape shows an undercover officer get into the back of the car carrying Mr. Marte and the cooperator. On the videotape, the voices of several men can be heard. Witnesses would testify that the car carrying the defendant followed to the Burger King and that the defendant was at the Burger King along with the others in his car.

The video shows that Mr. Marte produced a bundle of cocaine from the bag that Mr. Marte was carrying. Mr. Marte is shown handing the cocaine to the cooperator in exchange for

$9,000. As Mr. Marte is shown counting the money, police officers then moved in and arrested the defendant and Mr. Marte.

A DEA chemist would testify that the substance sold on May 6, 2005 was 999.4 grams of cocaine hydrochloride, a controlled substance.

This proffer of facts is not intended to be a full recitation of all facts that may have been presented at trial or are known to the Government. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the defendant's plea of guilty to the charged offense of distribution of heroin either as a principal or under an aiding and abetting theory.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar Number 498-610

By: */s/ Edward A. O'Connell*

EDWARD A. O'CONNELL
Assistant United States Attorney
D.C. Bar Number 460-233
Organized Crime and Narcotics Trafficking Section
555 Fourth Street, N.W.
Room 4122
Washington, D.C., 20530
(202) 514-6997
(fax) (202) 514-8707

5

## DEFENDANT'S ACCEPTANCE

I have read the Government's Proffer of Evidence setting forth the facts as to my distribution of heroin, in violation of Title 21, United States Code, Section 841. I have discussed this proffer fully with my attorney, Ron D. Earnest, Esquire. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: _____          *Collado Rodriguez*
                                        COLLADO RODRIGUEZ
                                        Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read the government's proffer of evidence as to my client's distribution of heroin. I have reviewed the entire proffer with my client and have discussed it with him fully. I acknowledge my client's agreement with and acceptance of this proffer.

Date: 1.8.07                            _____
                                        RON D. EARNEST, ESQUIRE
                                        Counsel for Defendant